UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BERNABE ENCARNACION,

                                **Plaintiff,**

   vs.                                                  9:21-CV-986
                                                                 (MAD/TWD)

**CHRISTOPHER OLIVO and**
**DALE VITARIUS,**

                                **Defendants.**
_____

APPEARANCES:                                    OF COUNSEL:

**HINCKLEY, ALLEN & SNYDER LLP**         **CHRISTOPHER V. FENLON, ESQ.**
30 South Pearl Street, Suite 901            **KIERAN T. MURPHY, ESQ.**
Albany, New York 12207
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**              **NICHOLAS W. DORANDO, AAG**
**STATE ATTORNEY GENERAL**          **MARK G. MITCHELL, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendant Corrections Officers Christopher Olivo and Dale Vitarius denied him access to the shower and recreation for sixty days while housed in the Special Housing Unit ("SHU") at Shawangunk Correctional Facility in violation of the Eighth Amendment. *See* Dkt. No. 1.

1

Trial is scheduled to commence on March 6, 2024. In advance of trial, Plaintiff and Defendants have moved *in limine* to admit and/or preclude certain evidence. *See* Dkt. Nos. 59, 68. Plaintiff seeks to preclude evidence of the following: (1) Plaintiff's criminal history; (2) Plaintiff's disciplinary history; and (3) prior lawsuits brought by Plaintiff. *See* Dkt. No. 68. Defendants seek the following relief: (1) to preclude evidence of mental and emotional injury related to a request for compensatory damages; (2) to permit Defendants to cross examine Plaintiff about the essential facts of his criminal convictions; (3) to preclude evidence of a conspiracy; (4) to preclude evidence of Defendants' disciplinary histories, personnel files, and prior lawsuits; (5) to permit Defendants to cross examine Plaintiff about his disciplinary history; (6) to preclude reference to a specific dollar amount of damages; (7) to preclude reference to indemnification; (8) to preclude Plaintiff from requesting punitive damages; and (9) to preclude evidence related to dismissed claims. *See* Dkt. No. 59. Plaintiff and Defendants responded in opposition to each other's motions. *See* Dkt. Nos. 70, 71.

As set forth below, Plaintiff's and Defendants' motions are granted in part and denied in part.

## II. DISCUSSION

### A. Motions *in Limine*

A motion *in limine* enables the Court to make an advance ruling on the admissibility of certain anticipated trial evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022). Generally, all "[r]elevant evidence is admissible" unless otherwise provided by an Act of Congress, the United States

Constitution, or the Federal Rules of Evidence. FED. R. EVID. 402. For instance, Rule 403 grants "the trial court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing FED. R. EVID. 403; *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986); *United States Martinez*, 775 F.2d 31, 37 (2d Cir. 1985)). Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). The Court is also "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

   1. ***Plaintiff's Prior Convictions***

Plaintiff seeks to preclude Defendants from introducing evidence of Plaintiff's prior felony convictions for the purpose of impeaching Plaintiff's credibility. *See* Dkt. No. 68 at 1. Plaintiff lists ten prior convictions from 1990 to 1996 for criminal sale of a controlled substance, criminal possession of a controlled substance, murder in the second degree, and promoting prison contraband. *See id.* at 3-4. Defendants seek to cross examine Plaintiff about all of his prior convictions and his ultimate sentence. *See* Dkt. No. 59 at 13.

Federal Rule of Evidence 609 vests broad discretion in the district court to admit or exclude evidence of prior convictions. *See United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984). Rule 609 provides that

> (a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

3

> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
>> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
>>
>> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting-- a dishonest act or false statement.
>
>> (b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>>
>>> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
>>>
>>> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

FED. R. EVID. 609. Rule 609(a)

> requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

*United States v. Estrada*, 430 F.3d 606, 621 (2d Cir. 2005) (quotation omitted). In "balancing probative value against prejudicial effect under [Rule 609], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the

4

credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing, *inter alia*, *United States. v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)).  "Although all of these factors are relevant, '[p]rime among them is [the first factor, *i.e.*,] whether the crime, by its nature, is probative of a lack of *veracity*.'"  *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)).

As to the first balancing factor, although Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness' propensity to testify truthfully, all felonies are not equally probative of credibility.  *See Estrada*, 430 F.3d at 617-18.  "[C]rimes of violence" rank low "on the scale of probative worth on credibility[.]"  *Id.* at 618; *see also Thomas v. Leifeld*, No. 9:13-CV-321, 2018 WL 3387690, *2 (N.D.N.Y. July 12, 2018) ("[The p]laintiff's convictions for Rape in the First Degree, Attempted Rape in the First Degree, Sexual Abuse in the First Degree, Sexual Abuse in the Second Degree, and Assault in the Second Degree are not particularly probative as to honesty and veracity").  "[C]rimes that involve evasions of responsibility or abuse of trust" tend to be "high on the scale" of "veracity-related crimes[.]"  *Estrada*, 430 F.3d at 618.

Defendants argue that although "some courts have drawn distinctions between crimes involving inherent dishonesty, and other types of crimes, for purposes of applying Rule 609, this distinction is not universal[.]"  Dkt. No. 59 at 12.  They assert that "many courts have noted that felony convictions—even for violent crimes and crimes not explicitly involving dishonesty—may still carry appreciable probative value as to credibility, especially where the case rests in large part on resolving dueling accounts of an incident or act."  *Id.*

"'[T]he idea underlying Rule 609, whether right or wrong, is that criminals are more likely to testify untruthfully.'"  *Giles v. Rhodes*, No. 94-CV-6385, 2000 WL 1510004, *2 (S.D.N.Y. Oct. 10, 2000) (quoting *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992)).  Courts have repeatedly

5

concluded that the possession of drugs "has little bearing on the veracity of [defendant] as a witness and thus, ranks fairly low on the impeachment value scale." *Brown*, 606 F. Supp. 2d at 319; *see also United States v. White*, 312 F. Supp. 3d 355, 359 (E.D.N.Y. 2018); *Granger v. City of Watertown*, No. 8:20-CV-0189, 2023 WL 418068, *2 (N.D.N.Y. Jan. 26, 2023); *Hardy v. Adams*, 654 F. Supp. 3d 159, 167 (N.D.N.Y. 2023).  Courts have distinguished possession of drugs from the sale of drugs, concluding that the latter can be more probative of truthfulness.  *See White*, 312 F. Supp. 3d at 359.  This is in the context of the selling resulting in "'a life of secrecy and dissembling in the course of that activity[.]'" *United States v. Vasquez*, 840 F. Supp. 2d 564, 569 (E.D.N.Y. 2011) (quoting *Ortiz*, 553 F.2d at 784).  Therefore, "the sale of drugs is not as probative of credibility as drug smuggling or conspiracy, which are likely to involve acts of dishonesty or deceit[.]" *Id.* (citing *Hayes*, 553 F.2d at 828; *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)).

There is no evidence presented by either party concerning the facts underlying Plaintiff's drug possession and sale convictions.  Without any indication that Plaintiff's sale of drugs required acts of deceit or untruthfulness, the Court concludes that the convictions fall low on the scale of veracity-related crimes.  Thus, this factor weighs against admission.

As to Plaintiff's conviction for second degree murder, Defendants explain that the conviction resulted from Plaintiff stabbing "another individual to death with an ice pick type weapon while incarcerated at Auburn Correctional Facility."  Dkt. No. 59 at 10.  "[F]ederal case law makes clear that murder, assault, and weapons possession charges are not the types of crimes contemplated within the scope of Rule 609(a)(2)." *Espinosa v. McCabe*, No. 9:10-CV-497, 2014 WL 988832, *4 (N.D.N.Y. Mar. 12, 2014); *see also Coleman*, 585 F. Supp. 3d at 215 ("The jury will already have knowledge of these witnesses robbery convictions; eliciting the fact of an

additional murder or sexual assault convictions would provide minimal impeachment value but could be significantly prejudicial to [the p]laintiff's case"); *Olutosin v. Gunsett*, No. 14-CV-00685, 2019 WL 5616889, *9 (S.D.N.Y. Oct. 31, 2019) (concluding that the first factor weighed against admission of evidence related to murder, attempted murder, and robbery convictions). There is nothing about Plaintiff's murder conviction, as presented by the parties, that suggests it bears on Plaintiff's truthfulness. Thus, this factor weighs against admission of evidence related to the conviction.

As to the second factor, Plaintiff was sentenced in 1991 and 1998. *See* Dkt. No. 59-1 at 70-73. As the convictions are approximately thirty years old, this factor weighs heavily in favor of preclusion.

"The third criterion, similarity of the crimes, deals with the similarity of the charged crimes, or the incident at issue in the pending case, to the conviction. The less similar the pending case to the prior conviction, the less prejudicial its admission is." *Somerville v. Saunders*, No. 9:11-CV-556, 2014 WL 272415, *9 (N.D.N.Y. Jan. 24, 2014) (quotation and quotation marks omitted). "On the other hand, a conviction for a crime that bears a close resemblance to actions alleged in the current case might cause 'unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts.'" *Id.* (quoting *Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993)). Here, there is no similarity between Plaintiff's convictions and the conduct at issue in this trial. As such, this factor weighs in favor of admission.

Finally, it is undisputed that Plaintiff's credibility is a central issue in this case. "[W]here the credibility of a given witness is particularly important because there is little other documentary or supporting evidence and 'success at trial probably hinges entirely on [the

7

witness's] credibility with the jury,' the fourth factor weighs in favor of admission of the prior conviction." *Somerville*, 2014 WL 272415, at *10 (quoting *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 544 (E.D.N.Y. 2011)). In response to Plaintiff's motion *in limine*, Defendants rely exclusively on this prong to support admission of Plaintiff's convictions. *See* Dkt. No. 70 at 1-2. The Court agrees that the credibility of the parties is particularly important in this case and that this factor weighs in favor of admitting the convictions. However, the Court must consider the other factors as well as the standards set forth in Federal Rule of Evidence 403.

The relevant Rule 403 factors are: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Here, particularly as it relates to Plaintiff's murder conviction, evidence related thereto "is highly prejudicial, because knowledge that Plaintiff was convicted of second[-]degree murder could cause the jurors to evaluate his worth as a witness based on that conviction, regardless of its irrelevance to his excessive force claim." *Zulu v. Barnhart*, No. 9:16-CV-1408, 2019 WL 3239397, *2 (N.D.N.Y. July 18, 2019). "As [P]laintiff's complaint concerns events that occurred during his incarceration [ ], the jury will be informed that plaintiff has been convicted of a crime by the very nature of the case." *Young v. Calhoun*, No. 85-CV-7584, 1995 WL 169020, *4 (S.D.N.Y. Apr. 10, 1995). Admission of the fact of his prior convictions thus will cause minimal added prejudice. As to Plaintiff's drug convictions, the fact that they occurred thirty years ago leads the Court to conclude that they will have extremely minimal probative value. *See Olutosin*, 2019 WL 5616889, at *9-10 (precluding details of thirty-two-year-old conviction). Additionally, the probative value of the name, nature, and number of the convictions as well as the date and the sentence imposed is substantially outweighed by the danger of unfair prejudice. Accordingly, the Court grants and denies the parties motions in part: evidence that Plaintiff is currently

8

incarcerated on the basis of felony convictions is admissible; the names, nature, dates, and sentences of the convictions are not.

Of course, if Plaintiff opens the door on this issue by attempting to bolster his own credibility or raising the issue of his underlying convictions, Defendants will be permitted to cross-examine him on the relevant details of the convictions.

### 2. *Disciplinary Histories, Personnel Files, and Prior Lawsuits*

Plaintiff and Defendants seek to preclude evidence of their respective disciplinary histories. *See* Dkt. No. 68 at 9-10; Dkt. No. 59 at 13-14, 17-18. Plaintiff exempts from his request "the portion of his disciplinary record that subjected him to the conditions of confinement at-issue in this trial." Dkt. No. 68 at 10. Defendants seek to be permitted to question Plaintiff about his disciplinary history, but to preclude evidence of their own personnel files and grievances filed against them by non-party incarcerated individuals. *See* Dkt. No. 59 at 13-14, 17-18. Specifically, Defendants seek to question Plaintiff about two disciplinary infractions for providing false information as probative of Plaintiff's veracity. *See id.* at 14. Both parties also seek to preclude evidence related to other lawsuits. *See* Dkt. No. 59 at 18; *see also* Dkt. No. 68 at 7-8.

Rule 608(b) states that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness . . . ." FED. R. EVID. 608(b). Additionally, Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). The Rule "prohibits the introduction of character

9

evidence to show that an individual has a certain predisposition, and acted consistently with such predisposition during the event in question." *Starmel v. Tompkin*, 634 F. Supp. 3d 41, 46 (N.D.N.Y. 2022) (citation omitted). However, such evidence may be admissible if offered for a different purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," subject to a Rule 403 analysis. FED. R. EVID. 404(b)(2). Thus, "[c]ourts may admit evidence of prior bad acts if the evidence is relevant to an issue at trial other than the [person's] character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." *United States v. Barret*, 677 Fed. Appx. 21, 23 (2d Cir. 2017) (citation and quotation marks omitted).

### a. Disciplinary Histories

Defendants seek to introduce evidence of Plaintiff's disciplinary history insofar as "Plaintiff's disciplinary history reveals two disciplinary convictions for providing false information." Dkt. No. 70 at 3.

In general, "'disciplinary records of a state ward plaintiff, *e.g.*, a prison inmate or psychiatric patient, are almost always inadmissible.'" *Starmel*, 634 F. Supp. 3d at 46 (quotation omitted). However, the Court agrees that the two infractions are relevant to Plaintiff's character for truthfulness or untruthfulness. *See* FED. R. EVID. 608(b). As Plaintiff states in his response to Defendants' motion *in limine*, the infractions were ten-to-twenty years ago. *See* Dkt. No. 71 at 6. Nevertheless, because they are probative of Plaintiff's character for truthfulness, and credibility is such a vital aspect of this trial (if not the primary consideration) the Court finds that the probative value is not substantially outweighed by the prejudicial effect of their introduction. The Court will, however, limit Defendants to introducing only the date and name of the two infractions. Insofar as Plaintiff does not object to inclusion "of the portion of Plaintiff's disciplinary record

that subjected him to the conditions of confinement at-issue in this trial," Dkt. No. 68 at 9, the Court will permit Defendants to introduce the name and date of that infraction.

Defendants are precluded from entering evidence of other instances of disciplinary conduct because the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. If Plaintiff opens the door to additional evidence of his disciplinary record, Defendants will be permitted to cross-examine him on the relevant details of his infractions. Plaintiff states that he does not intend to introduce evidence of Defendants' disciplinary records; thus, that aspect of Defendants' motion is denied as moot. *See* Dkt. No. 71 at 9.

### b. Prior Lawsuits

Both parties move to preclude evidence of prior lawsuits. *See* Dkt. No. 68 at 10-11; Dkt. No. 59 at 18. "It is well settled that it is improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a 'chronic litigant.'" *Hickey v. Myers*, No. 09-CV-01307, 2013 WL 2418252, *4 (N.D.N.Y. June 3, 2013) (quoting *Outley v. City of New York*, 837 F.2d 587, 591-93 (2d Cir. 1998)). "Prior lawsuits have been found admissible at trial, however, if they are offered for purposes other than to prove a party's litigiousness." *Id.* (citations omitted).

Defendants assert that "[g]iven Plaintiff's litigation history, it is impossible to know what items may become relevant in response to Plaintiff's elicited proof, or what inconsistent statements may be made during Plaintiff's testimony." Dkt. No. 70 at 4. Because Defendants do not seek admission of Plaintiff's litigation history at this time, nor explain why such evidence is necessary, the Court denies this aspect of Plaintiff's motions *in limine*. Similarly, Plaintiff states that he does not intend to introduce evidence of prior lawsuits; therefore, this aspect of Defendants' motion is denied as moot. *See* Dkt. No. 71 at 9.

### c. Personnel Files

Defendants seek to preclude evidence related to their personnel files. *See* Dkt. No. 59 at 18. Defendants argue that such evidence is irrelevant and unduly prejudicial. *See id.*

"Complaints against officers are [also] not probative of a . . . witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty." *Bryant v. Serebrenik*, No. 15-CV-3762, 2017 WL 713897, *2 (E.D.N.Y. Feb. 23, 2017) (citing *United States v. Horsford*, 422 Fed. Appx. 29, 30 (2d Cir. 2011)). Plaintiff states that he does not intend to introduce evidence of Defendants' personnel files, *see* Dkt. No. 71 at 9, and Defendants' motion is therefore denied at moot.

### 3. Conspiracy

Defendants contend that, because Plaintiff has not advanced a conspiracy claim, he should be precluded from eliciting testimony or argument that Defendants conspired to harm Plaintiff. *See* Dkt. No. 59 at 14-16. Plaintiff states that he does not intend to introduce evidence concerning a conspiracy. *See* Dkt. No. 71 at 9. Thus, Defendants' motion on this issue is denied as moot.

### 4. Specific Amount of Damages

Defendants seek to preclude Plaintiff's counsel from presenting a specific dollar amount of damages to the jury. *See* Dkt. No. 59 at 16-17. Defendants argue that permitting a party to request a specific dollar amount is generally disfavored. *See id.* In response, Plaintiff contends that he does not intend to request a specific dollar amount from the jury *See* Dkt. No. 71 at 9. Accordingly, the Court denies as moot this aspect of Defendants' motion *in limine*.

### 5. Indemnification

Defendants argue that Plaintiff should be prohibited from discussing potential indemnification of Defendants should the jury find one or both Defendants liable. *See* Dkt. No.

12

59 at 17. Defendants argue it is irrelevant and prejudicial. *See id.* The Court agrees. Reference to potential indemnification would be unduly prejudicial and is irrelevant. All references to indemnification or potential indemnification will be precluded. *See Nunez v. Diedrick*, No. 14-CV-4182, 2017 WL 4350572, *2 (S.D.N.Y. June 12, 2017) (holding that "the Court, like several other district judges in this Circuit, finds that references to . . . potential indemnification obligations would serve no probative value and potentially cause unwarranted prejudice"); *see also Coleman*, 585 F. Supp. 3d at 217 ("The Court agrees with [d]efendants that, during the upcoming trial, indemnification would not be relevant to any issue before the jury and would run a significant risk of unfairly prejudicing [d]efendants").[1]

### 6. *Punitive Damages*

Defendants request that Plaintiff be precluded from seeking punitive damages. *See* Dkt. No. 59 at 8-9. Defendants contend that Plaintiff did not seek an award of punitive damages against Defendants in his complaint and he is, therefore, precluded from seeking such an award at trial. *See id.* at 8. Plaintiff argues that because he filed his complaint *pro se* and included a request for punitive damages, such a request should be allowed. *See* Dkt. No. 71 at 4-5.

In Plaintiff's *pro se* complaint, he listed "relief requested" under three separate headings: "issue a declaratory judgment," "award compensatory damages," and "award punitive damages."

---

[1] Plaintiff contends that he "does not intend to introduce evidence regarding the State of New York's indemnification practices unless and until Defendants present evidence of their in/ability to pay punitive damages." Dkt. No. 71 at 8 n.6. Should the jury find that Plaintiff is entitled to an award of punitive damages, Plaintiff may be permitted to introduce evidence relating to an indemnification agreement. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("Although we do not decide the question of whether a fact-finder can rely upon the existence of an indemnity agreement in order to *increase* an award of punitive damages, we rule that a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some *reduction* in the amount that would otherwise be awarded").

Dkt. No. 1 at 14-16.  He also requested that the Court "[g]rant such and further reliefs [sic] as it may appear that Plaintiff Bernabe Encarnacion is entitled as this Honorable Court may seem [sic] just, equitable and appropriate."  *Id.* at 17.  Plaintiff listed Defendants Olivo and Vitarius under his requests for declaratory relief and compensatory damages but did not specifically include them in the list of Defendants that he sought punitive damages from.  *See id.* at 14-16.  Rather, under his request for punitive damages, Plaintiff requested, "$65,000[] against each of Defendants Forbes, White, Gardner, Connors Does #1-15, Ensel, Shanahan, and Noeth all of them Shawangunk and Attica C.F. employe[e]s."  *Id.* at 16.

"As the Second Circuit has repeatedly instructed, a complaint filed *pro se* 'must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests.'"  *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)).  "'This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated.'"  *Id.* (quoting *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012)).

Defendants argue that "[w]here a plaintiff does not make a demand for punitive damages in the Complaint, the plaintiff is not entitled to punitive damages, because the Defendants are entitled to timely notice of the request for damages."  Dkt. No. 59 at 8.  To support this contention, Defendants cite *Su v. Sotheby's, Inc.*, No. 17-CV-4577, 2024 WL 477029, *1 (S.D.N.Y. Feb. 7, 2024), *Crispino v. Greenpoint Mortg. Corp.*, 2 A.D.3d 478, 479 (2d Dep't 2003), and *Mendoza v. City of Rome*, 872 F. Supp. 1110, 1125 (N.D.N.Y. 1994).  *See id.*

None of the parties were *pro se* in *Su* or *Crispino*.  *See Su*, 2024 WL 477029, at *1; *Crispino*, 2 A.D.3d at 479.  Further, as Plaintiff states, in *Su*, punitive damages were not requested

14

until after trial. *See* Dkt. No. 71 at 4; *see also Su*, 2024 WL 477029, at *1. In *Mendoza*, it appears that the plaintiff filed a complaint *pro se*, but then filed a counseled amended complaint. *See Mendoza v. City of Rome, et al.*, No. 6:92-CV-00436, Dkt. Nos. 1, 20. In ruling on the punitive damages issue, the Court explained that the defendant "moved to dismiss the punitive damages verdict against him on the basis that he was not named individually in the caption of the complaint; and further, that the complaint does not allege any actions against him other than as a police officer of the City of Rome." *Mendoza*, 872 F. Supp. at 1125. The court noted that "[i]t is clear that the caption does not name [the defendant] as an individual defendant. However, the complaint does request punitive damages in Paragraphs '40,' '47,' and '53,' and in the addendum clause. Since [the defendant] could only be liable for punitive damages in his individual capacity, . . . a fair reading of the complaint would be that he has been sued individually." *Id.* (citing *Yorktown Medical Lab., Inc. v. Perales*, 948 F.2d 84, 89-90 (2d Cir. 1991) (holding that individual capacity claims do not fail for lack of express pleading)) (additional citations omitted). The court did not decide the issue, however, because it assumed "*arguendo* that [if] the issue of punitive damages was not raised by the pleadings, it was certainly tried with the express or implied consent of the parties." *Id.* It was consented to because the issue was not objected to until "the court was about to summon the jury to determine the amount, if any, of punitive damages to be awarded to the plaintiff . . . ." *Id.*

In a District of Vermont case, the court denied a request for punitive damages to a *pro se* plaintiff. *See Lizotte v. Menard*, No. 5:17-CV-27, 2019 WL 943539, *1 (D. Vt. Jan. 25, 2019). The defendants moved for summary judgment on the ground that "if [the plaintiff] asserts a claim for punitive damages, the claim fails, as there are no allegations that Defendants' conduct was motivated by an evil motive or intent," but the court did not consider that argument "given that

[the plaintiff] has not pled a claim for punitive damages in his Complaint. Even if he had, [the plaintiff's] claim would fail for the reasons stated herein." *Id.* at *1 n.2. The court earlier "conclude[d] that no reasonable trier of fact could find that [the d]efendants violated [the plaintiff's] Eighth Amendment rights." *Id.* at *10.

Here, Plaintiff argues that "[t]he evidence will establish that Defendants acted with high moral culpability when they denied Plaintiff access to basic human needs." Dkt. No. 71 at 8. "Punitive damages may be awarded in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *cf. Mosseri v. Zimmerman & Zimmerman*, 114 A.D.2d 338, 339 (1st 1985) (rejecting punitive damages claim because "the record is devoid of any showing of that type of fraud and deceit which, aimed at the public generally, is gross and involves high moral culpability"). The Court cannot predict whether Plaintiff will present evidence at trial concerning Defendants' intent sufficient to support an award of punitive damages or whether the jury will find Defendants' liable in the first place.

Defendants argue that Plaintiff failed to specifically request punitive damages against Defendants in his complaint and deposition, but they do not contend that they would be prejudiced in any way if the Court allowed such a request to go to the jury. *See* Dkt. No. 59 at 9. In Plaintiff's *pro se* complaint, he requested punitive damages against "all of them Shawangunk and Attica C.F. employe[e]s" Dkt. No. 1 at 16. Defendants were on notice that Plaintiff was seeking punitive damages, to some degree. They also did not raise the issue in their motion for summary judgment. *See* Dkt. No. 24. Additionally, some of the specifically named individuals

16

under Plaintiff's punitive damages request were not dismissed from this case until September 2023. *See* Dkt. No. 34.

Based on the foregoing, and affording Plaintiff the special solicitude required to be applied toward *pro se* filings, the Court will not dismiss Plaintiff's punitive damages claim for failure to specifically list Defendants Olivo and Vitarius in his list of Defendants against whom he sought punitive damages. Thus, Defendants' motion is denied on this ground. *See Dorsey v. Regan*, No. 6:14-CV-23, 2015 WL 3484933, *5 (N.D.N.Y. June 2, 2015) (allowing punitive damages claim to proceed where the defendants challenged it on summary judgment because although the plaintiff did not request it in his complaint, he was *pro se*, and [the d]efendants are not prejudiced by [the] plaintiff's failure to specifically request punitive damages while discovery was ongoing"); *Hopp v. Wikse*, No. 06-CV-80666, 2008 WL 4980664, *2 (S.D. Fla. Nov. 24, 2008) (quoting *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999)) ("However, courts are to construe *pro se* pleadings liberally, and a failure to specifically request punitive damages in a pro se complaint is 'not fatal' to the claim because '*pro se* complaints are not held to the stringent standards expected of pleadings drafted by lawyers'"); *Schmidt v. Kachel*, No. 02-C-286-C, 2003 WL 23162897, *2 (W.D. Wis. Apr. 3, 2003) (quotation omitted) ("I will allow plaintiff to amend his complaint to include a request for punitive damages. . . . The failure of a *pro se* plaintiff to request punitive damages or other specific relief in his complaint is not fatal, because 'it is well-settled law in this circuit that *pro se* complaints are not held to the stringent standards expected of pleadings drafted by lawyers'").

### 7. *Dismissed Claims*

Defendants seek preclusion of evidence related to any of Plaintiff's previously dismissed claims. *See* Dkt. No. 59 at 18. Previously dismissed claims are not relevant to the issues which

will be presented at trial. *See Diggs*, 621 F. Supp. 3d at 325-26 (citation omitted) ("[E]vidence relating solely to previously dismissed claims is irrelevant to the issues remaining for trial and is therefore inadmissible"). In his response, Plaintiff asserts that he does not intend to introduce evidence of dismissed claims. *See* Dkt. No. 71 at 9. The Court denies this part of Defendants' motion as moot.

### 8. *Mental and Emotional Injury under the PLRA*

Defendants argue that because Plaintiff has not suffered a physical injury, he should be precluded from introducing evidence related to mental or emotional injuries. *See* Dkt. No. 59 at 3-6. Defendants rely on the Prison Litigation Reform Act ("PLRA") which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e). "[T]here is no statutory definition of 'physical injury' as used in section 1997e(e)." *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999). "The PLRA's limitation on recovery 'is generally interpreted to preclude a prisoner complaining of mental and emotional injury during imprisonment, without a showing of physical injury, from receiving an award of compensatory damages.'" *Brandon v. Kinter*, No. 9:13-CV-939, 2023 WL 2382637, *26 (N.D.N.Y. Mar. 6, 2023) (quoting *Walker v. Schult*, 45 F.4th 598, 612 (2d Cir. 2022)). "[T]he physical injury required under § 1997e(e) must be more than de minimis." *Id.* (citing *Liner*, 196 F.3d at 135).

Plaintiff contends that because of the unconstitutional conditions of confinement, he lost thirty pounds during the sixty-day period at issue. *See* Dkt. No. 65 at 6. The vast majority of courts to have considered whether weight loss constitutes a "physical injury" under the PLRA, have concluded in the negative. *See Davis v. D.C.*, 158 F.3d 1342, 1349 (D.C. Cir. 1998);

18

*Brandon*, 2023 WL 2382637, at *26; *McMichael v. Pallito*, No. 1:09-CV-130, 2011 WL 1135341, *4 (D. Vt. Jan. 27, 2011); *Pearson v. Wellborn*, 471 F.3d 732, 744-45 (7th Cir.2006). *But see Cheatham v. Haye*, No. 2:19-CV-10480, 2020 WL 3481645, *2 (E.D. Mich. June 26, 2020) ("Because Sixth Circuit jurisprudence does not foreclose a finding that weight loss may constitute a physical injury sufficient to satisfy § 1997e(e), the Court will permit Plaintiff's Eighth Amendment claim against Haye to proceed past the motion to dismiss phase"); *Ward v. Gooch*, No. 5:07-CV-389, 2010 WL 4608292, *7 (E.D. Ky. Nov. 5, 2010) (allowing the plaintiff's Eighth Amendment claim to proceed past summary judgment where he lost 70 pounds because of an allegedly inadequate medical diet provided by the jail); *Bugler v. Suffolk County*, 289 F.R.D. 80, 93–94 (E.D.N.Y.2013) (concluding that allegations of "intestinal illnesses," "skin conditions," respiratory and fungal infections, nose bleeds, headaches, blurred vision and dizziness may constitute "physical injury" within the meaning of the PLRA).  More broadly, courts in this District have concluded that "physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injuries' for purposes of the PLRA." *McCloud v. Tureglio*, No. 9:07-CV-0650, 2008 WL 1772305, *9 (N.D.N.Y. Apr. 15, 2008); *see also Felix v. Nw. State Corr. Facility*, No. 2:15-CV-149, 2016 WL 11383920, *6 (D. Vt. Jan. 21, 2016); *Singh v. Mental Health Dep't of Attica Corr. Facility*, No. 9:08-CV-0860, 2008 WL 4371777, *4 (N.D.N.Y. Sept. 18, 2008).

The Court has no way of knowing what Plaintiff will testify to during trial and the Court cannot conclude whether there will be evidence that he suffered a more than *de minimis* physical

injury sufficient to allow the jury to consider compensatory damages under the PLRA. Thus, the court denies Defendants' motion at this time.[2,3]

### III. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiff's submissions, Defendants' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion *in limine* (Dkt. No. 68) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendants' motion *in limine* (Dkt. No. 59) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 1, 2024
         Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] Courts have noted that despite a failure to show a "physical injury," a plaintiff may still recover compensatory damages if he prevails on a claim based on his loss of a "constitutional liberty interest." *Rodriguez v. Touchette*, No. 5:19-CV-143, 2020 WL 2322615, *6 (D. Vt. May 11, 2020) (citations omitted); *see also Holland v. City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) (collecting cases). This is where the loss of liberty is separate from pain and suffering, mental anguish, and mental trauma. *See Ozzborn v. Cornell*, No. 9:17-CV-103, 2021 WL 2227829, at *9 (N.D.N.Y. June 2, 2021). Plaintiff's only remaining claim is an Eighth Amendment conditions of confinement claim, not a Fourteenth Amendment denial of liberty claim. The Court is not aware of a case where a court has extended the compensatory damages for liberty interest principle to a conditions of confinement claim. Thus, this does not support consideration of compensatory damages.

[3] Both parties have provided the Court with a proposed PLRA jury instruction. *See* Dkt. No. 59 at 7; *see also* Dkt. No. 71 at 3. The Court has considered both proposals and developed an instruction it believes is appropriate. The proposed instruction will be provided to both parties during the Court's charge conference toward the end of trial.