**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BERNABE ENCARNACION,**

                                        **Plaintiff,**

        **vs.**

                                                    **9:21-CV-986**
                                                    **(MAD/TWD)**

**CHRISTOPHER OLIVO and**
**DALE VITARIUS,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**BERNABE ENCARNACION**
91-B-0943
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**            **NICHOLAS W. DORANDO, AAG**
**STATE ATTORNEY GENERAL**            **MARK G. MITCHELL, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendant

Corrections Officers Christopher Olivo and Dale Vitarius denied him access to the shower and

recreation for sixty days while housed in the Special Housing Unit at Shawangunk Correctional

Facility in violation of the Eighth Amendment. *See* Dkt. No. 1. Following a three-day jury trial, Defendants were found not to have violated Plaintiff's constitutional rights. *See* Dkt. No. 87.

Presently before the Court is Plaintiff's *pro se* motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 89. Defendants respond in opposition. *See* Dkt. No. 101. Plaintiff replies. *See* Dkt. No. 106. Defendants have also filed a bill of costs, *see* Dkt. No. 90, to which Plaintiff responds in opposition. *See* Dkt. No. 97.

For the reasons set forth below, Plaintiff's motion is denied, and Defendants' motion is granted.[1]

## II. DISCUSSION

### A. Legal Standards

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a)(1). The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir.1998) (quotation marks and citation omitted). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *Id.*

---

[1] Plaintiff has two appeals from this case presently before the United States Court of Appeals for the Second Circuit. The first is an appeal from this Court's September 18, 2023, Memorandum-Decision and Order which granted in part and denied in part Defendants' motion for summary judgment. *See* Dkt. Nos. 34, 37; *see also Encarnacion v. Collado*, No. 23-7458 (2d Cir.). Plaintiff's second appeal challenges this Court's decision on the parties' motions *in limine* and the final judgment in Defendants' favor. *See* Dkt. Nos. 74, 88, 91; *see also Encarnacion v. Collado*, No. 24-911 (2d Cir.). The Second Circuit stayed both actions pending this Court's resolution of Plaintiff's motion for a new trial.

Under Rule 59(a), "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *Id.* In considering a motion for a new trial, the court is free to weigh the evidence independently and need not view it in the light most favorable to the verdict winner. *See Manley v. Ambase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003). The standard for granting such a motion is high and rulings on motions under Rule 59(a) "are committed to the sound discretion of the district court." *Severino v. Am. Airlines*, No. 07 CV 941, 2009 WL 1810014, *2 (S.D.N.Y. June 24, 2009) (quoting, *inter alia*, *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998)). "While a jury's credibility assessments are entitled to deference, these principles of deference to the jury do not override the trial judge's duty to see that there is no miscarriage of justice." *Livingston v. Escrow*, No. 08-CV-6576, 2014 WL 1466469, *2 (W.D.N.Y. Apr.15, 2104) (citations omitted). "The Second Circuit has instructed district courts to 'abstain from interfering with [a jury] verdict unless it is quite clear that the jury has reached a seriously erroneous result' that would result in 'a miscarriage of justice.'" *Fioto v. Manhattan Woods Golf Enter., LLC.*, 304 F. Supp. 2d 541, 545-546 (S.D.N.Y. 2004) (citing *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978)). "'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.'" *Carlson v. Parry*, No. 06-CV-6621, 2013 WL 5354517, *5 (W.D.N.Y. Sept. 24, 2013) (quoting *Kogut v. Cnty. of Nassau*, 2013 WL 3820826, *2 (E.D.N.Y. July 22, 2013)).

"Federal Rule of Civil Procedure 60(b) governs motions for relief from a final judgment or order and provides six independent grounds for relief." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). Rule 60(b) provides as follows:

> On motion and upon such terms as are just, the court may relieve a
> party . . . from a final judgment, order, or proceeding for the
> following reasons: (1) mistake, inadvertence, surprise, or excusable
> neglect; (2) newly discovered evidence which by due diligence
> could not have been discovered in time to move for a new trial
> under Rule 59(b); (3) fraud . . ., misrepresentation, or other
> misconduct of an adverse party; (4) the judgment is void; (5) the
> judgment has been satisfied, released, or discharged, or a prior
> judgment upon which it is based has been reversed or otherwise
> vacated, or it is no longer equitable that the judgment should have
> prospective application; or (6) any other reason justifying relief
> from the operation of the judgment.

FED. R. CIV. P. 60(b). [2]  The six provisions of Rule 60(b) are mutually exclusive, *see Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 393 (1993), and a court "may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable." *Maduakolam v. Columbia University*, 866 F.2d 53, 55 (2d Cir. 1989) (citations omitted); *see also Oparaji v. N.Y. Dept. of Educ.*, No. 00-CV-5953, 2006 WL 2220836, *2 (E.D.N.Y. July 20, 2006) (quoting *Maduakolam*, 866 F.2d at 55).  "Rule 60(b)(6) authorizes a district court to grant relief to a moving party for 'any other [] reason that justifies relief.'  It is a 'grand reservoir of equitable power to do justice in a particular case.'"  *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)).  "But that reservoir is not bottomless.  Recognizing Rule 60(b)(6)'s potentially sweeping reach, courts require the party

---

[2] Plaintiff did not move for relief under Rule 60 of the Federal Rules of Civil Procedure.  *See generally* Dkt. No. 89.  In their response, Defendants addressed Rule 60 in anticipation that the Court may construe Plaintiff's motion to raise the issue.  *See* Dkt. No. 101 at 10.  Given Plaintiff's *pro se* status, the Court will also consider his motion under the Rule 60 standards.  *See Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 2047819, *7 (S.D.N.Y. June 7, 2022) ("[G]iven Plaintiff's status as a pro se litigant and the Court's concomitant obligation to consider his submissions to raise the strongest possible arguments . . . the Court evaluates his motion under Rule 60(b)(6)"); *In re Ditech Holding Corp.*, No. 19-10412, 2021 WL 2258291, *5 (Bankr. S.D.N.Y. June 2, 2021).

seeking to avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief." *Id.* (citations omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994).

## II. DISCUSSION

### A. Plaintiff's Motion for a New Trial

Plaintiff argues that he is entitled to a new trial because (1) he was not given a bench trial; (2) "all Black and Spanish jurors were challenged and/or excluded from the jury"; (3) the jury instructions and jury verdict form instructed the jurors to vote "no" as to Defendants' liability; (4) the Court impermissibly admitted evidence that had not be previously disclosed to Plaintiff; and (5) "the court excluded [Plaintiff] from the court room during jury instructions." Dkt. No. 89 at 1-3.

#### 1. *Rule 59*

##### a. *Jury Trial*

"It is well established that the right to a jury trial is a fundamental right and that purported waivers are to be 'scrutinized with the utmost care.'" *S.E.C. v. Masri*, 551 F. Supp. 2d 320, 321 (S.D.N.Y. 2008) (quoting *Heyman v. Kline*, 456 F.2d 123, 129 (2d Cir. 1972)). "[A] party may withdraw its demand for a jury trial 'only if the parties consent.'" *Id.* (quoting FED. R. CIV. P. 38(d)). "This requirement permits a party to rely on a jury demand originally made by an adversary. . . . In limited circumstances, however, some courts have rejected a party's claims of reasonable reliance in light of conduct indicating strong and clear opposition to a jury trial." *Id.* at 331-32 (citing *Dell'Orfano v. Romano*, 962 F.2d 199, 202 (2d Cir. 1992) (additional citation omitted); *see also Alan Frank L. Assocs., P.C. v. OOO RM Inv.*, No. 17-CV-1338, 2023 WL 4861002, *4 (E.D.N.Y. Mar. 16, 2023) (citing, *inter alia, Rosen v. Dick*, 639 F.2d 82, 91 (2d Cir.

1980) (explaining that Rule 38(d) "ensures that one party may rely on another's jury demand");
*Huang v. Shanghai City Corp.*, No. 19-CV-7702, 2022 WL 2306870, *3 (S.D.N.Y. June 27, 2022) ([A] properly made demand may be withdrawn only on consent of the parties").

In Plaintiff's *pro se* complaint, he requested a jury trial. *See* Dkt. No. 1 at 1. In their answer, Defendants also requested a jury trial. *See* Dkt. No. 18 at 1. The parties did not consent to a retraction of the jury demands. There is no indication on the Court's docket that Plaintiff wished to proceed to a bench trial. As Defendants state, even if Plaintiff asked his attorney to request a bench trial, the case was required to proceed to a jury trial because a jury was requested by Plaintiff and Defendants and there was no subsequent stipulation by the parties to a bench trial. *See* Dkt. No. 6; *see also Houghtaling v. Down*, 559 F. Supp. 3d 158, 163 (W.D.N.Y. 2021) ("Plaintiff's case—brought pursuant to 42 U.S.C. § 1983—is not one of those classes of cases where there is no federal right to a jury trial. The case will proceed as a jury trial unless Plaintiff and Defendants stipulate to a bench trial").

Accordingly, Plaintiff is not entitled to a new trial on this ground.

### b. *Makeup of the Jury*

Plaintiff's counsel did not raise any issues with the makeup of the jury during trial. *See* Dkt. No. 105.[3] In fact, there is no discussion whatsoever in the trial transcript about the racial makeup of the jury. *See id.* Therefore, the Court cannot verify Plaintiff's contention that "all Black and Spanish jurors were challenged and/or excused." Dkt. No. 89 at 2. Nevertheless,

---

[3] In his reply, Plaintiff states that he is not bringing an ineffective assistance of counsel claim. *See* Dkt. No. 106 at 8, 10. Rather, Plaintiff outlines the ways in which his he believes his *pro bono* counsel was "inexperience[d]." *Id.* at 8-10. "'It is settled law . . . that the constitutional guarantee of effective assistance of counsel does not extend to civil cases.'" *Guardado v. Nassau Cnty. Corr. Facility*, 160 Fed. Appx. 66, 68 (2d Cir. 2005) (citing *United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981); *Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1980)).

affording Plaintiff the special solicitude required for *pro se* litigants, the Court will review the merits of his argument.

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial[ ] by an impartial jury of the State and district wherein the crime [was] committed . . . .'" *United States v. Slaughter*, 110 F.4th 569, 578 (2d Cir. 2024) (quoting U.S. Const. amend. VI). "In the nineteenth century, the Supreme Court struck down as unconstitutional the express exclusion of Black citizens from juries. . . . But the practical exclusion from jury service of Black people, women, and other groups persisted well into the twentieth century." *Id.* (citing *Strauder v. West Virginia*, 100 U.S. 303, 310 (1879)).

"In an effort to address this systematic exclusion, and recognizing that 'this Nation has stated and restated its commitment to the goal of the representative jury without making any significant effort to insure that this goal is attained,' Congress enacted the Jury Selection and Service Act of 1968." *Id.* (citing S. Rep. No. 90-891, at 9-11 (1967)). "The JSSA provides: 'It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.'" *Id.* (quoting 28 U.S.C. § 1861). "It further states that "[n]o citizen shall be excluded from service as a grand or petit juror . . . on account of race, color, religion, sex, national origin, or economic status.'" *Id.* (quoting 28 U.S.C. § 1862). "To that end, the JSSA requires each federal district court to adopt a plan for the random selection of grand and petit jurors that is 'designed to achieve' the objectives of Sections 1861 and 1862." *Id.* (quoting 28 U.S.C. § 1863(a)).

"[F]air cross-section challenges [are reviewed] under the burden-shifting framework set forth in *Duren v. Missouri*, 439 U.S. 357, (1979)." *Id.* "To establish a *prima facie* violation of the

fair cross-section requirement, the defendant must show that: (1) 'the group alleged to be excluded is a "distinctive" group in the community'; (2) 'the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community'; and (3) 'this underrepresentation is due to systematic exclusion of the group in the jury-selection process.'" *Id.* at 578-79 (quotation omitted). "Once the defendant satisfies all three of these elements, the burden shifts to the prosecution to show that a significant government interest is 'manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group.'" *Id.* at 579 (quotation omitted). "Fair cross-section challenges in civil cases brought under the JSSA are analyzed using the *Duren* test . . . ." *Joffe v. King & Spalding LLP*, 575 F. Supp. 3d 427, 433 (S.D.N.Y. 2021).

"There is little question that both Blacks and Hispanics are 'distinctive' groups in the community for purposes of this test." *United States v. Jackman*, 46 F.3d 1240, 1246 (2d Cir. 1995) (quoting *United States v. Biaggi*, 680 F. Supp. 641, 648 (S.D.N.Y.1988), *aff'd*, 909 F.2d 662 (2d Cir. 1990)); *see also United States v. Saipov*, No. 17-CR-722, 2023 WL 3495408, *2 (S.D.N.Y. May 16, 2023) ("Both parties agree that Black and Latino individuals are 'distinctive groups' under the first prong of *Duren*, . . . a view that is supported by caselaw in this District") (citations omitted). Nevertheless, Plaintiff has failed to establish that "the representation of [either] group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community" and that "this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Slaughter*, 110 F.4th at 578.

This Court's Jury Plan is set forth in General Order 24. *See* https://www.nynd.uscourts.gov/sites/nynd/files/general-orders/GO24.pdf (last visited Oct. 29, 2024). The Plan establishes that "[w]hile voter registration lists represent a fair cross section of

the community, an even greater number of citizens will be eligible for jury service if supplemental source lists are used." *Id.* at 4. "Accordingly, names of grand and petit jurors will be selected at random from voter registration lists of all counties in the relevant division and supplemented by lists of licensed drivers and New York State tax filers for these counties from the New York State Department of Motor Vehicles . . . and the New York State Department of Taxation and Finance." *Id.* "The selection of names from complete source list databases in electronic media for the master jury wheel will be accomplished by a purely randomized process through a properly programmed electronic data processing system." *Id.* at 5.

The Northern District of New York is comprised of thirty-two counties. *See* Counties, United States Probation and Pretrial Services Northern District of New York, https://www.nynp.uscourts.gov/counties (last visited Oct. 29, 2024). This Court, seated in the Albany Division, pulls its jurors from ten of those counties: Albany, Columbia, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Saratoga, Schenectady, Schoharie, Ulster, Warren, Washington. *See id.* According to 2023 Census Bureau data, these counties are predominantly White. The counties have the following demographic breakdown concerning White, Black, and Hispanic individuals (as these are the races raised by Plaintiff):

> Albany County is 53.7% White, 27.9% Black, and 9.0% Hispanic;
>
> Columbia County is 90% White, 5% Black, and 6.4% Hispanic;
>
> Fulton County is 94.5% White, 2.2% Black, and 4.6% Hispanic
>
> Greene County is 90.3% White, 5.2% Black, and 6.8% Hispanic;
>
> Hamilton County is 95.7% White, 1.5% Black, and 2.2% Hispanic;
>
> Montgomery County: 91.3% White, 4.3% Black, 15.7% Hispanic;
>
> Rensselaer County: 84.7% White, 8.9% Black, and 6.2% Hispanic;

Saratoga County is 92.1% White, 2.4% Black, and 4.0% Hispanic;

Schenectady County: 74.7% White, 14% Black, and 8.3% Hispanic;

Schoharie County: 94.8% White, 1.9% Black, and 4.2% Hispanic;

Ulster County: 86.4% White, 7.5% Black, and 12.4% Hispanic;

Warren County: 95% White, 1.7% Black, and 3.1% Hispanic; and

Washington County: 94.9% White, 2.6% Black, and 3.0% Hispanic.

Quick Facts, United States Census Bureau, https://www.census.gov/quickfacts/fact/table/
(last visited Oct. 29, 2024).

Plaintiff has not presented evidence that the jury venire at his trial did not represent a
reasonable and fair proportion of the individuals across these counties. Even if he had,
considering the ten counties are not exclusively White, there is no evidence that any
underrepresentation is due to systematic exclusion of either distinctive group in the jury-selection
process. Rather, the jury selection process in the Northern District of New York has been
consistently upheld. *See United States v. Young*, 822 F.2d 1234, 1239 (2d Cir. 1987) ("Assuming
that the first two parts of defendants' *prima facie* case have been established [because the jury was
all White], we nevertheless reject defendants' claim because it is clear that the jury selection
system employed in the Northern District of New York does not result in "systematic exclusion of
[blacks and hispanics] in the jury-selection process'"); *United States v. Plaza-Andrades*, 507 Fed.
Appx. 22, 25 (2d Cir. 2013) (affirming district court judgment and rejecting ineffective assistance
of counsel claim because "Plaza-Andrades does not contend that 'there was [an] improper purpose
or design in the creation of the [Utica] Division jury wheel,' nor does he contend that there was
any other 'systematic exclusio' of racial minorities from within the Utica Division jury pool");
*Matima v. Celli*, 228 F.3d 68, 82 (2d Cir. 2000) ("Matima's argument that the all-white jury pool

violated his right to a trial by a jury of his peers is meritless because Matima failed to demonstrate that the Northern District's jury selection system results in the unfair under-representation or systematic exclusion of blacks, . . . and this Court has previously upheld the Northern District's system") (citations omitted).  Therefore, Plaintiff's motion for a new trial is denied on this ground.

Defendants correctly explain that insofar as Plaintiff cites *Batson v. Kentucky*, 476 U.S. 79 (1986)[4] in his motion for a new trial, his argument fails because Plaintiff did not raise it at trial. *See* Dkt. No. 101 at 7; Dkt. No. 89 at 4; *see also Galarza v. Keane*, 252 F.3d 630, 638 (2d Cir. 2001) ("[A] party must raise his or her *Batson* challenges in a manner that would allow a trial court to remedy the problem at trial").

Accordingly, Plaintiff's motion is denied.

### c.  *Jury Instructions, Verdict Sheet, and Plaintiff's Presence for Jury Question*

Plaintiff argues that the Court erred by (1) instructing the jury on punitive damages; (2) instructing the jury that their deliberations were complete if they did not find that Defendants violated Plaintiff's constitutional rights; and (3) speaking with the jury without Plaintiff's presence in the courtroom.  *See* Dkt. No. 89 at 5-8.

"Erroneous or inadequate jury instructions may constitute grounds for a new trial, provided the errors are 'prejudicial in light of the charge as a whole.'"  *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 197 (N.D.N.Y. 2019) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012)).  "An erroneous jury instruction 'misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.'"  *Id.* at 197-98 (quotation and citations

---

[4] "In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court fashioned a three-part burden-shifting framework that trial courts are to employ when ascertaining whether a particular peremptory strike of a jury panelist is based on an impermissible discriminatory motive in violation of the Equal Protection Clause of the Fourteenth Amendment."  *Messiah v. Duncan*, 435 F.3d 186, 194 (2d Cir. 2006) (citations omitted).

omitted).  "An error in a jury instruction is not prejudicial 'when [the court is] persuaded it did not influence the jury's verdict.'"  *Id.* (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 56 (2d Cir. 2012)).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. . . .  A new trial is not warranted if the instructions read as a whole, presented the issues to the jury in a fair and evenhanded manner."  *Id.* (quoting, *inter alia*, *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 152 (2d Cir. 2014)) (additional quotations and quotation marks omitted).

"Decisions as to the format and language to be used in a special verdict form are committed to the trial court's discretion, . . . and there is no abuse of discretion if the verdict form, when read in conjunction with the instructions to the jury, clearly presents the material factual issues raised by the pleadings and evidence."  *Lore*, 670 F.3d at 159-60 (citing *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)).

Plaintiff accurately recites the wording of the jury verdict form which instructed the jury that if it "answered 'No' in Question 1(a), your deliberations are complete.  Please have the foreperson sign and date the last page of the Verdict Form.  If you answered 'Yes' for either Defendant in Question 1(a), please proceed to Question 1(b)."  Dkt. No. 87 at 1-2.  The subsequent questions concerned proximate cause and damages.  *See id.* at 2-3.  Because the jury found that Defendants had not violated Plaintiff's rights, there was no need for them to determine proximate cause or damages.  Plaintiff provides no evidence, other than his own statements, that because the instructions informed the jury their deliberations were complete if they answered "No" to the first question, that they did not take their function seriously in weighing all of the evidence to come to a unanimous verdict.

Insofar as the instructions addressed punitive damages, the jury was instructed that it was "only to consider whether or not Plaintiff is **entitled** to such an award of punitive damages. If you determine that Plaintiff is so entitled, a separate hearing will be held at which you will hear evidence relevant to the proper amount of such damages." Dkt. No. 82 at 16.

"As a number of courts within the Second Circuit have recognized, it is often preferable 'to bifurcate trials in order to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensation have been tried.'" *Hamm v. Potamkin*, No. 98-CV-7425, 1999 WL 249721, *1 (S.D.N.Y. Apr. 28, 1999) (quoting *Smith*, 861 F.2d at 374); citing, *inter alia*, *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990)). The Court takes this approach, in part, to allow time for the parties to engage in settlement discussions. Plaintiff has not presented anything other than his own statements to convince the Court that the jury instructions on punitive damages influenced the jury's verdict because they wanted to "go home." Dkt. No. 89 at 6.

In any event, Plaintiff's objections are waived because he did not challenge the jury instructions or the verdict form during trial. Federal Rule of Civil Procedure 51(c)(1) states that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51(c)(1). As reflected in the trial transcript, the Court held a charge conference with counsel for both parties wherein it permitted both parties to raise any objections to the proposed jury instructions and verdict form. *See* Dkt. No. 105-1 at 98. Plaintiff's counsel did not object to the instruction regarding punitive damages or the jury verdict form. *See id.* at 98-99. The failure to raise such objections constitutes a waiver of the arguments. *See Meron Tech. Distribution Corp. v. Discreet Indus. Corp.*, 189 Fed. App'x. 3, 4 (2d Cir. 2006); *Zsa Zsa Jewels, Inc. v. BMW of N.*

*Am., LLC*, No. 15-CV-6519, 2023 WL 3455057, *14 (E.D.N.Y. May 15, 2023); *Creative Waste*

*Mgmt., Inc. v. Capitol Env't Servs., Inc.*, 495 F. Supp. 2d 353, 357 (S.D.N.Y. 2007).

Finally, Plaintiff contends that he was not present in the courtroom when the Court

answered a question posed by the jury during its deliberations. *See* Dkt. No. 89 at 7-8. This is

directly contradicted by the trial transcript which indicates that when the Court answered the

Jury's only question, "[t]he record will reflect that we are in open court. The jury is present and

accounted for. The attorneys and the clients and our interpreter are present." Dkt. No. 105-1 at

148. At the time the jury verdict was read, Plaintiff was also present in the courtroom with the

interpreter. *See* Dkt. No. 105-2 at 2. Plaintiff presents no evidence to support his assertion that

he missed any portion of the Court's instructions to the jury.

Accordingly, Plaintiff's motion is denied on this ground.

### d.  *Discovery and Trial Evidence*

Plaintiff argues that the Court allowed Defendants to present evidence to the jury that had

not previously been disclosed to Plaintiff including two misbehavior reports, medical records, and

his photo identification. *See* Dkt. No. 89 at 6.

Defendants explain that Plaintiff's disciplinary records were produced prior to trial and

were the subject of motions *in limine*. *See* Dkt. No. 101 at 9. Likewise, Defendants contend

Plaintiff's photo identification was produced with Defendants' Rule 26 initial disclosures. *See id.*

Finally, as to Plaintiff's medical records, Defendants state that they were provided to Plaintiff

before trial; however, Defendants' counsel, Assistant Attorney General Nicholas Dorando did

retrieve a clean, updated, and certified medical packet right before trial. *See id.* Trial commenced

on March 6, 2024. *See* Dkt. No. 80. On March 1, 2024, defense counsel received a clean copy of

Plaintiff's medical records. *See* Dkt. No. 101-1 at 8. Defense counsel requested the new copy because the prior attorney assigned to the case "had highlighted the other medical records." *Id.*

Mr. Dorando submits a declaration wherein he attests that Plaintiff's disciplinary records, photo identification, and medical records were disclosed in July 2022. *See id.* at 1-6. He also explains that "[i]n advance of trial, understanding that Plaintiff's counsel and I were not in agreement as to the admissibility of the Plaintiff's medical record, I requested a clean, re-certified copy of the Plaintiff's medical records. On March 1, 2024, I received a copy of the same in the mail. In reviewing the documents, I noticed that the mailing contained some additional records. That afternoon, I e-mailed the copy of the certified medical records to Plaintiff's counsel." *Id.* at 2.

Federal Rule of Civil Procedure 26(a) governs, amongst other required disclosures, the parties' mandatory initial disclosures and pretrial disclosures. Pursuant to Rule 26(e), "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." FED. R. CIV. P. 26(e); *see also Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012). "In order to ensure parties' compliance with the mandatory disclosure requirements of Rule 26, Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that: 'If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (quoting FED. R. CIV. P. 37(c)(1)). "The purpose of Rule 37(c) is to prevent the practice of

'sandbagging' an adversary with new evidence." *Id.* (quoting *Ebewo v. Martinez*, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004)).

Plaintiff has not shown that Defendants failed to comply with any Rule 26 disclosure requirements. Insofar as Mr. Dorando produced clean copies of Plaintiff's own medical records immediately prior to trial, that evidence had been previously provided to Plaintiff in accordance with Defendant's discovery obligations. *See* Dkt. No. 101-1 at 2, 5-6. Plaintiff's photo identification and his disciplinary records were also earlier produced. *See id.* at 1-2. Specifically, as to Plaintiff's disciplinary records, they were the subject of Defendants' motion *in limine* whereby they sought to introduce evidence of Plaintiff's disciplinary convictions. *See* Dkt. No. 59 at 13-14. Plaintiff's disciplinary records were attached to Defendants' motion. *See* Dkt. No. 59-1 at 76-79. Plaintiff's attorney responded in opposition to Defendants' motion, *see* Dkt. No. 71, and the Court permitted Defendants to cross examine Plaintiff about his disciplinary infractions for providing false information from 1997 and 2005. *See* Dkt. No. 74 at 10-11. Those were the only two infractions that Mr. Dorando inquired about on cross examination of Plaintiff. *See* Dkt. No. 105 at 112.[5]

To the extent, Mr. Dorando's records request produced new documents that had not been previously held by Defendants nor provided to Plaintiff, Mr. Dorando sent them to Plaintiff "in a timely manner" as required by Rule 26(e). FED. R. CIV. P. 26(e). Mr. Dorando declares under the penalty of perjury that he sent the new documents to Plaintiff the same day that he received them. *See* Dkt. No. 101-1 at 2. Plaintiff does not identify the contents of the "new" documents that were

---

[5] In his motion for a new trial, Plaintiff references a 1995 record. *See* Dkt. No. 89 at 6. The Court is not aware of what document Plaintiff is referring to and assumes that he intended to refer to the 1997 disciplinary infraction. There is no reference to 1995 in the trial transcript. *See* Dkt. No. 105-1.

not previously disclosed, nor does he explain how any of the documents prejudiced his case. Accordingly, Plaintiff's motion is denied.

### 2. *Rule 60*

"The standards for motions to vacate under Rule 60(b) are very similar to those used for motions to reconsider under local district court rules." *Johnson v. Toffey*, No. 9:01-CV-1907, 2011 WL 3841540, *3 (N.D.N.Y. Aug. 24, 2011) (citing *McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524 (E.D.N.Y. 2008)) (footnote omitted). "Relief under Rule 60 is considered 'extraordinary judicial relief.'" *Id.* (quoting *Nemaizer*, 793 F.2d at 61). "For that reason, the standard for granting relief from a final judgment under Rule 60 is very strict, and the motion will generally be denied unless the moving party or parties can show that the court overlooked facts or controlling law that 'might reasonably be expected to alter the conclusion reached by the court.'" *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

The Court has reviewed the parties' filings, this Court's prior decisions, the trial transcript, and the docket and has found no grounds for granting relief from the final judgment under Rule 60(b)(6). The Court is aware that "[a]lthough relief pursuant to Rule 60(b)(6) is generally granted only upon a showing of exceptional circumstances or undue hardship, 'a pro se litigant . . . should not be impaired by the harsh application of technical rules.'" *Gil v. Vogilano*, 131 F. Supp. 2d 486, 494 (S.D.N.Y. 2001) (quoting *Major v. Coughlin*, No. 94-CV-7572, 1997 WL 391121, *2 (S.D.N.Y. July 11, 1997)) (additional quotation and quotation marks omitted). "Pro se litigants are not, however, excused from the requirement that they produce 'highly convincing' evidence to support a Rule 60(b) motion." *Id.* (quotation omitted).

Plaintiff has not presented any evidence that there are "exceptional circumstances" warranting relief under Rule 60. As such, the Court denies Plaintiff's motion.

**B.      Defendants' Motion for a Bill of Costs**

Defendants filed a bill of costs.  *See* Dkt. No. 90.  Defendants request $284.16 in transcript fees, $148.87 for witness fees, $653.00 in copy fees, and $20.00 in docket fees, totaling $1,106.03.  *See id.* at 1.  Plaintiff opposes the motion, arguing that Defendants' request is untimely, transcript fees should be denied because the trial transcript was complete, fees related to non-party witness John T. Connors should be denied because his testimony was irrelevant, and fees for copies should be denied because Plaintiff has not been provided with the copies and there are no receipts for the documents.  *See* Dkt. No. 97.  Plaintiff asks that the Court reduce Defendants' request to $20.00 or stay a ruling on the motion pending his appeal to the Second Circuit.  *See id.* at 4.

The Court will first address Plaintiff's request for a stay.  Under the Northern District of New York's Guidelines for Bills of Costs, "[u]less otherwise ordered by the District Court, or the Circuit Court of Appeals pursuant to Fed. R. App. P. 8, the filing of an appeal shall not stay the taxation of costs . . . ."  Local Guideline I.F.2, https://www.nynd.uscourts.gov/sites/nynd/files/Guidelines_Bill_of_Costs_091021.pdf (last visited Oct. 29, 2024).  "The Court notes that Rule 62, which governs stays of proceedings to enforce a judgment, does not appear applicable to a bill of costs."  *LeClair v. Raymond*, No. 1:19-CV-28, 2022 WL 1046441, *6 (N.D.N.Y. Apr. 7, 2022), *aff'd*, No. 22-309-CV, 2023 WL 6632949 (2d Cir. Oct. 12, 2023) (citing FED. R. CIV. P. 62).  "Nevertheless, '[w]hile Rule 62 outlines the mechanism for how a stay may be obtained while an appeal is pending, it does not limit the district court's inherent power to issue a stay in a manner that does not fall within the

scope of the Rule.'" *Id.* (quoting *Miller v. City of Ithaca*, No. 10-CV-597, 2017 WL 61947, *4 (N.D.N.Y. Jan. 5, 2017)) (citations omitted).

"'The party requesting a stay bears the burden of showing that the circumstances justify an exercise of th[e court's] discretion.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). The Court considers the following four factors in determining whether to issue a stay, the first two of which "are the most critical": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation omitted).

Plaintiff has not established that a stay is warranted. Based on the Court's review of Plaintiff's motion for a new trial, he is unlikely to succeed on the merits of his appeal. Plaintiff has not otherwise explained why he would be irreparably harmed absent a stay. *See* Dkt. No. 97. Considering all four factors, because Plaintiff has not met his burden of establishing entitlement to a stay, the Court denies Plaintiff's request for a stay. *See Oliver v. New York State Police*, No. 1:15-CV-444, 2023 WL 246698, *8 (N.D.N.Y. Jan. 18, 2023), *aff'd sub nom. Oliver v. D'Amico*, No. 22-979, 2024 WL 2013670 (2d Cir. May 7, 2024); *Encarnacion v. Spinner*, No. 9:15-CV-1411, 2023 WL 2785745, at *7-8 (N.D.N.Y. Apr. 5, 2023).

As to Defendants' timing with the filing their motion for a bill of costs, Federal Rule of Civil Procedure 54 states that "[t]he clerk may tax costs on 14 days' notice." FED. R. CIV. P. 54(d)(1). "Rule 54(d)(1) does not specify a time frame for when the prevailing party must file its bill of costs." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 6:12-CV-00196, 2020 WL 950283, *3 (N.D.N.Y. Feb. 27, 2020). Local Rule 54.1, however, states that "[t]he party entitled to recover costs set forth in 28 U.S.C. §1920 shall file, within thirty (30) days after entry

19

of judgment, a verified bill of costs on the forms that the Clerk provides . . . ."  N.D.N.Y. L.R.

54.1(a).  Defendants filed their motion within thirty days of the entry of judgment such that

Plaintiff's objection on this ground is without merit.

     Next, pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, and as relevant

here, the prevailing party should be allowed costs other than attorney's fees.  Recoverable fees

include the following:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts
> necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any
> materials where the copies are necessarily obtained for use in the
> case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of
> interpreters, and salaries, fees, expenses, and costs of special
> interpretation services . . . .

28 U.S.C. § 1920.  The non-prevailing party "bears the burden of showing that costs should not be

awarded."  *Parks v. Blanchette*, No. 3:09-CV-604, 2016 WL 1408075, *1 (D. Conn. Apr. 8, 2016)

(citing *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001), *abrogated on other grounds by*

*Bruce v. Samuels*, 577 U.S. 82 (2016)).  "Denial of costs is appropriate where the losing party has

'limited financial resources' or the case involved difficult questions or an issue of public

importance."  *Id.* (quoting *Whitfield*, 241 F.3d at 270).

A prevailing party is "ordinarily . . . permitted to recover costs for the original and one copy of [a] transcript[ ]." *C.C. ex rel. Camarata v. Polaris Indus., Inc.*, No. 14-CV-0975, 2018 WL 3031848, *5 (N.D.N.Y. June 19, 2018). Stenographer fees are generally recoverable, *Hines v. City of Albany*, 862 F.3d 215, 219 n.2 (2d Cir. 2017), as are exhibit fees, because "exhibits are a necessary part of an original deposition transcript," *In re Omeprazole Patent Litig.*, No. 00-CV-6749, 2012 WL 5427849, *4 (S.D.N.Y. Nov. 7, 2012); *see* Local Guideline II.D.1.h.-i., Costs, (listing "[c]ourt reporter fees for attendance and travel for depositions" and "copies of papers obtained as exhibits in the deposition" as taxable costs). Plaintiff argues that a trial transcript has not been completed. *See* Dkt. No. 97 at 2. However, the transcript has since been filed with the Court and mailed to Plaintiff. *See* Dkt. No. 105. Accordingly, Defendants' request for $284.16 for one copy of Plaintiff's deposition transcript is reasonable and warranted.

Next, for the Court to award witness fees and mileage, a witness's testimony must be "'relevant and material to an issue in the case and reasonably necessary to its disposition.'" *Zulu v. Barnhart*, No. 9:16-CV-1408, 2019 WL 4544420, *2 (N.D.N.Y. Sept. 19, 2019) (quoting *Fed. Sav. & Loan Ins. Corp. v. Szarabajka*, 330 F. Supp. 1202, 1208-09 (N.D. Ill. 1971)) (citations omitted). As explained during his trial testimony, Connors was the day shift watch commander at the time of the alleged constitutional deprivations. *See* Dkt. No. 105-1 at 74, 90. According to Connors, he was tasked with supervising other corrections officers, he had to make daily rounds and check in with the incarcerated individuals, and he never denied plaintiff showers or recreation. *See id.* at 91-92. This testimony is clearly relevant to the issue at trial: whether Plaintiff was denied access to showers and recreation. Therefore, the requested witness fees are appropriate. *See Spinner*, 2023 WL 2785745, at *6 ("Plaintiff's arguments are without merit. The decision whether to credit a witness's testimony is within the discretion of the jury, . . . and the

testimony of each witness 'was relevant and material to . . . issue[s] in the case and reasonably necessary to [their] disposition[.]'") (quotations omitted).

As the statutory attendance fee is $40.00 per witness, and the mileage for the witness has been calculated at the rate of $0.67, as prescribed under 28 U.S.C. § 1821(c)(2) and the United States General Services Administration Privately Owned Vehicle Mileage Rates, effective January 1, 2024, *see* https://www.gsa.gov/travel/plan-a-trip/transportation-airfare-rates-pov-rates-etc/privately-owned-vehicle-pov-mileage-reimbursement (last visited Oct. 29, 2024), Defendants' request for costs in the amount of $148.87 is granted.  *See* N.D.N.Y. Guidelines for Bills of Costs II(F)(1)(a), (b) (providing that "[w]itnesses are entitled to $40.00 per day of testimony" and mileage at the rate "set by the General Services Administration").

Plaintiff also challenges the fees for exemplification and copies of discovery and trial exhibits.  *See* Dkt. No. 90 at 4; Dkt. No. 97 at 3.  This Court's Guidelines permit "[d]iscovery-related copy costs."  Local Guideline II.H.1.g.  Likewise, "'[c]ourts interpret [28 U.S.C. § 1920(4)] to include photocopying charges for discovery.'"  *Green v. Venettozzi*, No. 9:14-CV-1215, 2019 WL 4508927, *2 (N.D.N.Y. Sept. 19, 2019) (quoting *Phillips v. Allen*, No. 07-CV-666, 2011 WL 1884558, *2 (N.D. Ill. May 6, 2011)) (citation omitted).  Defendants provided sufficient information regarding the purpose and necessity of the documents related to their initial and supplemental disclosures such that costs will be awarded for those copies in the amount of $203.00.  The Court's Guidelines also allow "[c]opies directed by the Court" and "[a]ny courtesy copies required to be provided to the presiding judge" to be taxed.  Local Guideline II.H.1.a.,c.  Defendants have clearly outlined the purpose and use of the copies of their trial exhibits such that the Court will grant their request for those copies in the amount of $450.00.

Plaintiff argues that the $20.00 docket fee should not be awarded because he "had already paid the entire[] docket fees in this case." Dkt. No. 97 at 4. 18 U.S.C. § 1920 explicitly permits taxation of "[d]ocket fees under section 1923." 18 U.S.C. § 1920(5). Section 1923 taxes a $20.00 fee "on trial . . . in civil . . . case." 18 U.S.C. § 1923(a). The Court's Guidelines reflect this statutory scheme. *See* Local Guideline I.F.2, II.I. Because trial occurred in this case, the docketing fee for a civil trial is warranted.

Finally, Plaintiff's argument that Defendants have not presented any receipts or documents to support their bill of costs is inaccurate. *See* Dkt. No. 97 at 4. Defendants have provided documentation related to each of their requests. Therefore, the Court grants Defendants' total request for $1,106.03 in costs and fees.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiff's submissions, Defendants' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion for a new trial (Dkt. No. 89) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for a bill of costs (Dkt. No. 90) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 1, 2024
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

23